## MARIANO DeMINICO *vs.* DAVID CRAIG & others.

Worcester.    October 6, 1910. — February 27, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Equity Jurisdiction,* To enjoin unlawful strike, Injunction, Damages. *Strike. Labor Union. Damages.*

Whether the purpose for which a labor strike is instituted is or is not a legal justification of the strike is a question of law.

In order that a labor strike should be a legal one it is necessary that the strikers should have acted in good faith in striking for a purpose which the court holds to have been a justification of the strike.

A labor strike is not a legal one merely because the strikers instituted it in good
faith for a purpose which they thought to be a legal justification of the strike.

It is not a justification of a labor strike that a foreman is "distasteful" to some of
the employees under him.

A labor strike properly cannot be said to be for the purpose of bettering the con-
dition of the workmen concerned in it merely because its purpose is to escape
from something which the workmen dislike.

It here was said by way of illustration, that, if a foreman was in the habit of using
epithets so insulting to the workmen under his direction that they could not
maintain their self respect while working under him, a strike to get rid of him
would be a lawful one.

A labor strike to get rid of a foreman because some of the workmen under him
have a dislike for him is not a strike for a legal purpose.

In a suit in equity seeking an injunction to restrain an unlawful labor strike to
prevent the employment of the plaintiff as foreman by a certain firm, where the
bill contains also a prayer for damages, if the plaintiff proves a case entitling
him to relief, but before the time for a final decree the firm in question have
stopped work and have ceased to employ either foremen or workmen, there is
no occasion for an injunction and the only relief that can be granted is an award
of damages.

In a suit in equity to enjoin an unlawful strike to prevent the employment of the
plaintiff as foreman by a certain firm, with a prayer for damages, damage to
the plaintiff's reputation may be a proper element of damage if he proves that
damage to his reputation was in fact caused by the defendants' illegal action.

LORING, J.    This bill is brought by a member of the Milford
Branch of the Granite Cutters' International Association of
America against the president and secretary of the association
and certain members of it who constituted its adjustment com-
mittee.   The plaintiff seeks to have the defendants enjoined from
combining against his employment as a foreman by Wells Broth-
ers, and for damages.   The case went to a master and is before
us on his report.*

The plaintiff and one Ardolino had been employed by Wells
Brothers as the foremen of their stone quarry at Hopkinton
since March, 1909 (when work was begun there to furnish the
stone for a building in process of erection in Boston), until the
matters here complained of took place in the following June.
On the evening of June 22, 1909, the Milford Branch of the as-
sociation voted to refuse to continue at work under the plaintiff
and Ardolino as foremen, and pursuant to that vote none of the

---

* The bill was filed in the Supreme Judicial Court on July 15, 1909. The
case was referred to Arthur P. Hardy, Esquire, as master, and later was re-
served by *Rugg*, J., upon the bill and answer and the master's report for
determination by the full court.

men employed by Wells Brothers went to work on June 23, the next day. A meeting was had between Wells Brothers and the adjustment committee of the association on that next day, June 23, and the result of it was an agreement between Wells Brothers and the officers of the association by which the men went back to work on the following day, June 24, and the plaintiff and Ardolino were removed as foremen on Saturday night, June 26. The plaintiff thereafter worked as a journeyman for Wells Brothers until January 10, 1910, when work at the quarry ceased.

The occasion for the strike was a discharge or a supposed discharge by the plaintiff of one Tronconi on the morning of June 22. There was a rule of Wells Brothers forbidding the men to enter the blacksmith shop. On the day in question Tronconi went into the blacksmith shop to get some tools which were being sharpened for him and was ordered out by Ardolino, the other foreman. Later the plaintiff gave Tronconi some instructions which Tronconi understood to mean that he was discharged. But the plaintiff always denied that he intended to discharge Tronconi. Thereupon on the same day the president and two members of the adjustment committee of the association had a conference with the plaintiff and Tronconi. At this conference Tronconi insisted that he had been unjustly discharged, the plaintiff denied that he had discharged him at all, and told him to go back to his work. The meeting of the association was held on the evening of that day, the strike followed the next day and was ended by the agreement reached on the afternoon of the second day, as we have already stated.

We pass by certain findings made by the master on issues raised by the pleadings which have now become immaterial, and come to his finding on the only issue now in dispute, namely, Was the strike for a justifiable purpose?

The master begins the part of his report in which that question is considered with this finding: "I find . . . that the respondents in securing his [the plaintiff's] removal were actuated by personal objections some of them had against his continuance in the office of foreman."

We take this finding as to the "respondents" to be a finding as to the action of the members of the Milford Branch of the

association of which branch the defendants were officers, and that the defendants were liable if the action of the association was illegal because they personally participated in it. As is pointed out by the defendants in their answer, there are no sufficient allegations in the bill to make all the members of the association, as a class, parties defendant. See *Pickett* v. *Walsh*, 192 Mass. 572, 589.

The Milford Branch of the association had a membership of two hundred and sixty-four granite cutters and tool sharpeners working in four different shops, one of which was the shop in question run by Wells Brothers. Ninety-seven of the two hundred and sixty-four were employed by Wells Brothers, and of this number the master finds that probably not more than one-third attended the meeting on the evening of June 22.

The master's further findings on this point are in substance as follows: "While it is probable that the complainant made some minor mistakes, I am of the opinion that his work as foreman was acceptable to Wells Brothers Company, and that he was sufficiently competent to fill the position to the satisfaction of the company. No workman lost any pay or otherwise suffered any actual damage by reason of any mistakes made by the complainant. In regard to the enforcement of the rules, I find that the rules were established by the company, and that it was the duty of the complainant as foreman to see that they were enforced. I am of the opinion that the real complaint of the majority of the men claiming to have a grievance against the complainant and his fellow foreman Ardolino, was because of their enforcement of these rules, and that they did enforce them more strictly than the men had been accustomed to having them enforced." The master then states the attempts made by the plaintiff and Ardolino to enforce the rules of their employers, Wells Brothers. He finds that they (1) had attempted to have the rule against going to the blacksmith shop strictly enforced; (2) to stop the men's knocking off work a few minutes before the working day ended; (3) to stop their using the compressed air to brush their clothes; and (4) in one instance to stop a man's eating his luncheon during working hours. The master's findings which follow are in these words: "I find that in doing these things the complainant did only what it was his duty as

foreman to do, and while the enforcement of the shop rules may have been more rigid than what the men were accustomed to, the personal attitude and conduct of the complainant toward the men was not unduly severe or in any way oppressive, although some of the witnesses testified that they so considered it. To attempt to give in detail the various reasons given by the witnesses for their dislike or objection to the complainant as foreman would require substantially a résumé of the entire testimony. Many of these objections appear to one not skilled in the trade as being trivial, and none of them were brought to the attention of the adjustment committee or any officer of the branch until June 22, 1909. At the special meeting the dislike and various objections of the men were voiced to some extent. It is quite possible that what appears to an outsider to be trivial in a single instance may, in the aggregate, have appeared to the men engaged in the work to be of more or less serious importance. I am quite strongly of the opinion that were it not for the existence of the present case, many of the complaints brought out by the testimony would not have received any consideration by the branch or have been made the subject of a complaint to the committee or officers of the branch by the men themselves, yet it is clear that there was a substantial feeling of dislike and objection on the part of some of the men working at. Wells Brothers to the continuance of the complainant and Ardolino as foremen." After a finding that the vote of the men on the evening of June 22 would not have been carried without the assistance of the votes from members not working for Wells Brothers, the master continues in these words: "I find that neither the complainant's habits, conduct nor character were such as to render him an unfit associate in the shop for ordinary workmen of good character, and that, but for the strike, Wells Brothers would not have removed the complainant from his position as foreman; that the strike was instigated by a comparatively few men who were successful in inducing other members to adopt their suggestions and join them in their purpose to secure the complainant's removal as foreman, although they testified that their purpose was to secure better conditions regardless of the consequences which might ensue to the complainant."

In two instances in his report the master has made a distinc-

tion between what was testified to by the defendants or in their behalf and what he finds to have been the fact. The first instance is where he finds that the plaintiff's personal attitude and conduct was not unduly severe or oppressive " although some of the witnesses testified that they so considered it." · The second instance is where the master finds " that the strike was instigated by a comparatively few men who were successful in inducing other members to adopt their suggestions and join them in their purpose to secure the complainant's removal as foreman, although they testified that their purpose was to secure better conditions." We interpret this to be a finding that the purpose of this strike was not to " secure better conditions " for the workmen as distinguished from a purpose to get rid of a foreman who was disliked by some of the employees. To conclude the statement of the master's findings on the purpose of the strike he found that the reasons " for their dislike or objection " to the plaintiff and Ardolino were " trivial " and would not have received any consideration had it not not been for the existence of the present case; and that these reasons " dislike and objection " were founded on a feeling of grievance because of the " enforcement of these rules . . . more strictly than the men had been accustomed to having them enforced."

. Whether the purpose for which a strike is instituted is or is not a legal justification for it, is a question of law to be decided by the court. To justify interference with the rights of others the strikers must in good faith strike for a purpose which the court decides to be a legal justification for such interference. To make a strike a legal strike it is necessary that the strikers should have acted in good faith in striking for a purpose which the court holds to have been a legal purpose for a strike, but it is not necessary that they should have been in the right in instituting a strike for such a purpose. On the other hand a strike is not a strike for a legal purpose because the strikers struck in good faith for a purpose which they thought was a sufficient justification for a strike. As we have said already, to make a strike a legal strike the purpose of the strike must be one which the court as matter of law decides is a legal purpose of a strike, and the strikers must have acted in good faith in striking for such a purpose.

The purpose of the strike here in question has been found to have been to get rid of two foremen because some of the workmen had personal objections to and a dislike for them. Or, to use the words of their own counsel, because these foremen were "distasteful to [some of] the employees." We are of opinion that that is not a legal purpose for a strike. The plaintiff had a right to work and that right of his could not be taken away from him or interfered with by the defendants unless it came into conflict with an equal or superior right of theirs. The defendants' right to better their condition is such an equal right. But to humor their personal objections, their likes and dislikes, or to escape from what "is distasteful" to some of them is not in our opinion a superior or an equal right.

It is doubtless true that in a certain sense the condition of workmen is better if they work under a foreman for whom they do not have a personal dislike, that is to say, one who is not "distasteful" to them. But that is not true in the sense in which those words are used when it is said that a strike to better the condition of the workmen is a strike for a legal purpose. One who betters his condition only by escaping from what he merely dislikes and by securing what he likes does not better his condition within the meaning of those words in the rule that employees can strike to better their condition.

The defense in the case at bar has not failed because a strike to get rid of a foreman never can be a strike for a legal purpose. We can conceive of such a case. If, for example, a foreman was in the habit of using epithets so insulting to the men that they could not maintain their self respect and work under him, a strike to get rid of him in our opinion would be a legal strike. It is not necessary in the case at bar to define such cases and lay down their limits. It is wiser, in our opinion, in matters such as we are now dealing with, to go no farther than to decide each case as it arises. What we have just said is said to prevent misapprehension as to what is now decided. What we now decide is that a strike to get rid of a foreman because some of the employees have a dislike for him is not a strike for a legal purpose.

For these reasons a majority of the court are of opinion that the strike was not a legal one.

It appears that the work at Wells Brothers ceased on January

10, 1910. There is therefore no occasion for an injunction to issue in the case at bar.

The master found that the difference between the plaintiff's wages as foreman and as a journeyman for the period in which he was employed by Wells Brothers is $110.62, and then made the following finding: " In addition to this the complainant claims the right to recover damages for his loss of position as foreman, damage to his reputation, and the hindering of his prospects of advancement. I make no ruling on this contention of the complainant or his right to recover for the difference between what he formerly earned and that which he now receives, and without intimating in any way that he is entitled to recover anything, but in order that the court may have all of the facts before it at the hearing on this report, I find that if the court shall rule that the strike was not justifiable and that the complainant is entitled to damages, the sum of $500 will amply compensate him for whatever damage he has suffered or may suffer, including loss of wages." We could not say that the plaintiff would not be entitled to recover for damage to his reputation if he proved that damage to his reputation was in fact caused by the defendants' illegal action. Under the finding of the master we are of opinion that the plaintiff is entitled to the larger sum with interest from January 10, 1910, when his work at Wells Brothers ceased, the bill having been filed in the preceding July.

*Decree accordingly.*

The case was submitted on briefs.

*J. M. Hallowell & F. T. Hammond* for the plaintiff.

*F. W. Mansfield*, for the defendants.