FRANK HANSON *vs.* GEORGE INNIS & others.

Middlesex. January 16, 1912. — February 29, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DE COURCY, JJ.

*Unlawful Interference. Strike. Labor Union. Equity Pleading and Practice,* Parties. *Equity Jurisdiction,* To enjoin unlawful strike, Damages.

In a suit in equity against the officers and members of an unincorporated labor union for unlawfully causing the discharge of the plaintiff as the foreman of a granite company, if it appears that the defendants instituted and continued an unlawful strike which compelled the superintendent of the granite company as a last resort to agree to leave the question whether he should discharge the plaintiff to a vote of the workmen at the quarry and that upon a majority of such workmen voting against the retention of the plaintiff the superintendent discharged him, the plaintiff is entitled to relief against the defendants who instituted and maintained the strike and not merely against those workmen who voted at the quarry for his discharge.

In a suit in equity against the officers and members of an unincorporated labor union for unlawfully causing the discharge of the plaintiff as the foreman of a granite company, if it appears that unlawful acts of the defendants caused the discharge of the plaintiff and made it impossible for him to procure other employment, the plaintiff is entitled to recover damages not only for the loss of wages due to his discharge but also, once for all, for his present and prospective inability to procure employment, which may continue for an indefinite time, caused by the unlawful acts of the defendants.

BILL IN EQUITY, filed in the Supreme Judicial Court on August 27, 1909, against officers and members of the Milford Branch of the Quarry Workers International Union of North America and of the Milford Branch No. 88 of the Derrickmens International Union of North America, voluntary unincorporated associations, seeking relief by way of injunction and damages for causing the discharge of the plaintiff in May, 1909, as foreman of the Massachusetts Pink Granite Company, a corporation doing business in Milford.

The case was referred to Arthur P. Hardy, Esquire, as master. The following facts, among others, appeared by his report. In February, 1909, one Perry, who was the superintendent of the granite company, employed the plaintiff under an oral agreement as foreman of that company at $21 a week. He was to continue in charge of the quarry until a contract for cutting the stone for the John Hancock Building in Boston had been completed and thereafter as long as there was work to be done. The defendants Dacey and Mahoney applied for work under the plaintiff but were refused because there were no vacancies. On motion of the defendant Dacey a vote was passed by the quarry workers' union that the plaintiff be required to join that union and that his initiation fee be fixed at $50, the usual fee being $1.50. The plaintiff did not make application to join the union, and Perry was notified of a vote of the union that its members should not work under the plaintiff as foreman. The plaintiff was not discharged at that time, and the next day the defendants in the employ of the granite company refused to work, and a strike was begun which continued about ten days, during which Perry made unsuccessful attempts to induce the striking defendants to resume work. Finally Perry proposed that all the men working for the granite company should take a vote at the quarry and that he should abide by the decision of the majority. Such a vote was taken by ballot at the quarry with the result that fourteen workmen voted for the plaintiff and sixteen against him, whereupon Perry notified the plaintiff that the vote had gone against him and that he could retain him no longer in the employ of the company.

The master made the following findings: "I find that the purpose of the strike was to compel the discharge of Hanson [the plaintiff] as foreman, not because of his treatment of the men working under him or because he was otherwise incompetent to act as

foreman. In my opinion it was instituted simply and solely because of the influence which Dacey had over the men working for the Massachusetts Pink Granite Company, and he exerted this influence to advance his private interests in an attempt to secure redress for what he considered was unfair treatment on the part of Hanson." In a supplemental report the master found that "Hanson as a foreman was entirely satisfactory to Perry and he desired to retain him in the employ of the company in that capacity," and "that the vote proposed by Perry was taken as a result of coercion imposed upon him by the unions and the defendants by instituting and continuing the strike."

Soon after his discharge the plaintiff was employed again by the granite company but not in the capacity of foreman or quarryman and his employment lasted for only four days. The plaintiff attempted to secure work at other quarries in Milford and elsewhere but in each instance was refused work because he was unable to give an affirmative answer to the question as to whether or not he had effected a settlement with the union. The master found that the plaintiff by reason of his discharge lost as wages to the time that the quarry was shut down in December, 1909, the sum of $588, and that he was deprived by the action of the defendants and other members of the union from securing employment elsewhere. He also found as follows: "It is a fair inference from the evidence introduced that this inability to secure employment as a journeyman quarryman will continue indefinitely or until such time as the complainant becomes a member of the union; also that his inability to secure employment as a foreman in the trade or calling in which he is skilled and the only one for which his experience and training fit him will continue indefinitely. If the court rule that the complainant is entitled to recover damages, then I find and rule that he is entitled to damages in the sum of $2,000, including loss of wages as above stated."

The defendants' exceptions to the master's original report were as follows:

"1. Because it appears by the report that the plaintiff was discharged from the quarry by Mr. Perry as the result of a vote taken by secret ballot by men working at the quarry, which vote the plaintiff was cognizant of, apparently acquiesced in, and made no objection to until he found that the vote was against him. On this

state of facts the defendants asked the master to rule that the plaintiff was estopped from bringing any action against the defendants by reason of his own participation and apparent acquiescence in the vote, but the master declined to so rule.

"2. Because the master in assessing damages for the plaintiff has not confined himself to actual damage, but has allowed the plaintiff damages based upon apprehension of inability on the part of the plaintiff to secure work in the future; and because damages over and above the amount actually shown to be lost in wages less the amount that he had earned has been allowed by the master.

"3. It appears that the plaintiff when he became foreman took a formal withdrawal card from the union [not one of those represented by the defendants] but it does not appear that he severed his connection therewith, neither did he appeal to the local branch or any officer or body connected with the organization for relief. On this state of facts the defendants asked the master to rule that the plaintiff should have exhausted the remedies provided in the constitution of the union to which he belonged before applying to the courts for relief and objection is taken to the master's refusal so to rule.

"4. It appears that it was the vote of sixteen workmen employed at the quarry which caused Hanson to be discharged by Perry and the defendants asked the master to rule that these sixteen individuals alone, if any, should be held as defendants and because the master refused so to rule.

"5. Since the strike was directed against the Massachusetts Pink Granite Company and it is not a party to the plaintiff's bill, it is immaterial whether the strike is justifiable or not, and objection is taken to the master's report because he refused to so rule."

The defendants' exceptions to the master's supplemental report were as follows:

"1. Because it is against the evidence.

"2. Because it is against the weight of the evidence.

"3. Because a fair construction and interpretation of the evidence upon which said supplemental report is based does not justify the findings therein contained.

"4. Because the findings arrived at therein by the master are

inconsistent with the statements of fact contained therein upon which the master bases said findings."

The case came on to be heard before *Morton*, J., who reserved it for determination by the full court upon the pleadings, the master's report, the master's supplemental report, and the exceptions of the defendants.

*C. L. Newton*, for the plaintiff.

*F. W. Mansfield*, for the defendants.

SHELDON, J. None of the exceptions taken by the defendants to the master's original report can be sustained.

The plaintiff never had agreed to abide by the result of the vote taken at Perry's suggestion, and had had nothing to do with causing it to be taken. There is no ground for the contention that he was estopped by any participation or apparent acquiescence therein from bringing his action against the defendants.

The plaintiff was not a member of either of the labor unions named in the bill and was not bound by any of their rules. He was not obliged to seek relief in their tribunals, but could resort to the courts to obtain redress for any wrong done to him by them. That he had been a member of another different labor union is not material.

On the facts found by the master, the plaintiff's discharge and his inability to obtain other work were caused by the unlawful acts of the defendants. *Berry* v. *Donovan*, 188 Mass. 353. Perry acted under their compulsion. Of course the strike intended to obtain this unlawful end was unjustifiable; and it was material to show that the injury done to the plaintiff had been procured by unlawful means. The remedy accordingly was against the defendants, and not merely against the sixteen men who had voted against the retention of the plaintiff.

The plaintiff is entitled in this suit to recover once for all his entire damages sustained from the unlawful acts of the defendants in procuring his discharge and making it impossible for him to procure other employment. *De Minico* v. *Craig*, 207 Mass. 593, 600.

The findings in the master's supplemental report are not inconsistent with the facts upon which they are based. The other exceptions thereto depend upon the evidence, which has not been reported, and so none of them can be sustained.

Upon the facts reported by the master the plaintiff is entitled to a decree for damages for the sum of $2,000. *Berry* v. *Donovan,* 188 Mass. 353. *Pickett* v. *Walsh,* 192 Mass. 572. *De Minico* v. *Craig,* 207 Mass. 593. *Folsom* v. *Lewis,* 208 Mass. 336. This gives him full damages, past and future. As he has asked for damages for all time, and at the argument did not ask for an injunction, it is not necessary now to discuss that matter.

*Decree accordingly.*