WILLIAM J. HOBAN & others *vs.* WILLIAM F. DEMPSEY & others.

Suffolk.   December 2, 1913. — February 28, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Labor Union.   Longshoreman.   Contract,* Validity.   *Equity Jurisdiction,* To enjoin unlawful interference, Conspiracy.   *Monopoly.*

A contract between the members of a labor union of longshoremen and the representatives of certain steamship companies, by which it is agreed that all longshoremen employed by the steamship companies shall be members of that union whenever such men are available and that, whenever such men are not available, men not members of that union may be employed, if entered into freely and fairly for the mutual benefit of the contracting parties without any intention of injuring other longshoremen or of coercing them into joining the union, is valid, and its performance will not be enjoined in a suit in equity brought by longshoremen in the same port who are not members of that union.

An essential element of a boycott is intentional injury to somebody.   By RUGG, C. J.

In a suit in equity to enjoin the performance of a contract between the members of a labor union of longshoremen and the representatives of the steamship companies loading and discharging at Boston, where the bill was dismissed by this court on the ground that the contract was valid, there was evidence which would have warranted a finding that the union whose members were parties to the contract represented "practically the whole of the longshoremen of the port," but this was not found as a fact by the justice who heard the case and it was plain from the allegations of the bill and the report of the evidence at the trial, that relief was not sought on the ground that the contract was in violation of the Sherman anti-trust act or on the ground that it established an unlawful monopoly, and consequently these questions could not be raised and were not passed upon, and it was not necessary to consider St. 1911, c. 503.

BILL IN EQUITY, filed in the Supreme Judicial Court on February 25 and amended on February 28, 1913, by certain officers of Noddle Island Asembly No. 5789 of the Knights of Labor, an unincorporated association, for themselves and all other members who wish to join as parties, against the officers and members of certain unincorporated associations of longshoremen and certain persons individually and as members of the executive committee of the Transatlantic Steamship Conference, a voluntary organization, to enjoin the defendants from carrying out a certain agreement in writing dated February 20, 1913, between persons representing the Boston Transatlantic Steamship Lines and contracting steve-

dores and persons representing the International Longshoremen's Association, and from refusing to employ the plaintiffs and the members of their union for the reason that they are not members of the unions organized by the defendants; praying also for an injunction to restrain the defendants from conspiring to injure the plaintiffs by preventing them from obtaining employment, and to restrain the defendant members of unions from conspiring to prevent by threats and intimidation the defendant representatives of steamship companies from employing the plaintiffs unless they become members of the unions formed and controlled by the defendants; and for further relief.

The portion of the contract of February 20, 1913, alleged to be illegal was as follows: "Article I. It is distinctly understood and agreed that all Longshoremen employed by the party of the first part in connection with loading and unloading of ships shall be members of the International Longshoremen's Association whenever such men are available and whenever such men are not available then the party of the first part has the right to employ such other men who can perform the work until such time as the party of the second part can furnish the men, but the party of the first part has the right to employ such non-union men until the completion of the day on which they are employed."

The case was heard by *Braley,* J., who made the findings which are quoted in the opinion. He ruled as matter of law that the bill could not be maintained, and ordered that a decree be entered dismissing it. A final decree was entered dismissing the bill; and the plaintiffs appealed.

The case was argued at the bar in December, 1913, before *Rugg,* C. J., *Morton, Hammond, Braley,* & *De Courcy,* JJ., and afterwards was submitted on briefs to all the justices then constituting the court.

*E. A. Whitman,* for the plaintiffs.

*S. R. Jones,* for the defendants Thomas, Cusick and Wylde.

*F. W. Mansfield,* for certain other defendants.

RUGG, C. J. The plaintiffs are members of a labor union of longshoremen. There are two groups of defendants, the one members of a different labor union of longshoremen, and the other representatives of certain transatlantic steamship companies. The plaintiffs seek to enjoin the defendants from proceeding with

an agreement which consists of thirty articles covering most, if not all, of the conditions of labor likely to arise in the course of such employment. One paragraph provides in substance that all longshoremen employed by the contracting transatlantic steamship lines shall be members of the defendant union whenever such men are available, and whenever such men are not available, then other men may be employed until the defendant union can supply men, but in any event men not members of the defendant union may be employed until the end of the day. It is contended that this clause is so illegal that performance of the contract ought to be enjoined at the instance of third parties. A trial was had before a single justice who, at its conclusion, found that the "contract was freely and fairly entered into between the contracting parties without any purpose or motive on the part of the representatives of the International Longshoremen's Association [the defendant union] to injure the plaintiffs or to coerce them into joining its union or unions, although I am satisfied that the legal effect of the contract may deprive the plaintiffs of employment by the transatlantic steamship lines," and ruled as matter of law that the bill could not be maintained and entered a decree dismissing it. The plaintiffs' appeal brings the case here.

It is familiar law that the findings of fact made by a single justice are not to be set aside unless plainly wrong. There was testimony from witnesses from both groups of defendants that their purpose in entering into the contract was not to harm the plaintiffs, but primarily to secure the welfare of each party to it. The steamship agents testified that they previously had dealt with several different organizations or local unions; that the committees representing these bodies were cumbersome in numbers, not small enough to make an effective body, and in consequence, in case of disagreement as to working conditions, there was difficulty in getting an adjustment; and that work was not done expeditiously and well, and it was felt that if an agreement was made with one strong union, under good control and management, it would be easier to get an adequate supply of labor and to settle troubles that might arise; and that no coercion or intimidation was exercised over them by the defendant union, and that they acted voluntarily with a view singly to their own interests in signing the contract. The advantage to the defendant union lay in securing a permanent

arrangement covering all labor conditions, with preference in employment for their own members. The uncontradicted direct testimony was to the effect that the dominant motive on the part of both parties was to gain benefits for themselves and in no sense to harm the plaintiffs. Of course the defendants must be presumed to have intended the natural results of their acts, whatever may have been their oral statement respecting their intention. But it is plain from this summary of testimony that the finding that there was no purpose to injure the plaintiffs or to compel them to join the defendant union was supported by evidence. The tortious acts and motives which frequently have been found to exist in cases involving industrial disputes are absent in the case at bar. There has been no violence, threat or intimidation.

The question remains whether upon the facts found the plaintiffs are entitled to relief. There is no allegation or proof of coercion or violence direct or indirect toward the plaintiffs, or that the plaintiffs or any of them have been discharged from employment as a result of the contract. It is uncontroverted that the employment of longshoremen is occasional, work being offered only upon the arrival and departure of vessels. The plaintiffs' complaint is that, having no present contract, there is likelihood that in the future they will not be able to secure employment to the same extent as formerly from the transatlantic steamship lines by reason of this contract. This is a simple case where employers and a union of employees have made an agreement freely and without any kind of constraint, the terms of which do not require the breaking of contractual relations with any one, to the end that all the work of a specified kind be given to the members of a union so far as they are able to do it, for a limited period of time. If a sufficient number of union men are not supplied, the employer may hire whom he chooses. For aught that appears, the contract may have followed competition between rival groups of workmen to secure the work.

The inducements which moved both parties to the making of the contract were those ordinarily accompanying the kind of competition which is within the bounds of law. There was no fraud, intimidation, molestation, threat or coercion, covert or open, acting either upon the body or mind or property interests of the contracting parties. The incitements to the contract were

those of business advantage alone. The terms of the contract do not preclude the employers from procuring workmen from any source if the defendant union does not supply them constantly with a sufficient number of competent longshoremen. But on the contrary, they are given this right expressly. The explicit finding of the single justice was to the effect that a desire or intention to harm the plaintiffs by depriving them of the chance of work, or to compel them to join the defendant union, or to do them any other injury, was not a part of the design of the contract nor one of the influences operating upon the minds of the parties in executing it. Whatever loss may come to them is an incidental result and not an essential element of a contract, whose dominant purpose is within the limits of lawful bargaining. No economic pressure, threat of business loss, or interference with absolute freedom of action was exercised in order to procure the making of the contract. There was nothing of the boycott about the contract, for an essential element of the boycott is intentional injury to somebody. An agreement of this sort under the circumstances disclosed is within the protection of *Pickett* v. *Walsh,* 192 Mass. 572, 584. It is within the lawful principles as to the conduct of business expounded at length and with great clearness in *Martell* v. *White,* 185 Mass. 255. See also *Mogul Steamship Co.* v. *McGregor,* 23 Q. B. D. 598; *S. C.* on appeal, [1892] A. C. 25. See in this connection, *Commonwealth* v. *Strauss,* 188 Mass. 229; *S. C.* 191 Mass. 545. Those principles are the law of this Commonwealth. It is not necessary to repeat or restate them. They are decisive against the contentions of the plaintiffs. There is nothing inconsistent or inharmonious with this conclusion, either in the facts or the principles declared in the numerous decisions by this court involving so called labor disputes, which are collected in *Minasian* v. *Osborne,* 210 Mass. 250, at 255. The principles on which those cases were decided are reaffirmed now but they do not reach to the facts of the case at bar as found by the single justice. See also *Quinn* v. *Leathem,* [1901] A. C. 495; *South Wales Miners' Federation* v. *Glamorgan Coal Co.* [1905] A. C. 239; *Bowen* v. *Matheson,* 14 Allen, 499. The facts' in the case at bar are different from those presented in *Berry* v. *Donovan,* 188 Mass. 353, where the direct result of the contract between the defendant and the plaintiff's employer was that the plaintiff was discharged.

For the same reason, among others, *DeMinico* v. *Craig,* 207 Mass. 593, and *Hanson* v. *Innis,* 211 Mass. 301, are to be distinguished. There was no strike or other compulsion to procure a closed shop, conduct which has been held illegal. As was said by Knowlton, C. J., in *Folsom* v. *Lewis,* 208 Mass. 336, at 338: "Strengthening the forces of a labor union, to put it in a better condition to enforce its claims in controversies that may afterwards arise with employers, is not enough to justify an attack upon the business of an employer by inducing his employees to strike." *Berry* v. *Donovan,* 188 Mass. 353. *Plant* v. *Woods,* 176 Mass. 492. *Pickett* v. *Walsh,* 192 Mass. 572, 582. *Reynolds* v. *Davis,* 198 Mass. 294, 302. *McCord* v. *Thompson-Starrett Co.* 129 App. Div. (N. Y.) 130, affirmed in 198 N. Y. 587. *Brennan* v. *United Hatters of North America,* 44 Vroom, 729. But a different situation is presented by a voluntary and unforced agreement, freely made solely for the mutual advantage of the contracting parties, which does not effect the discharge from employment of any one. There are decisions in other jurisdictions to the precise point in harmony with the conclusion here reached. *Jacobs* v. *Cohen,* 183 N. Y. 207. *Kissam* v. *United States Printing Co.* 199 N. Y. 76. *National Fire Proofing Co.* v. *Mason Builders' Association,* 94 C. C. A. 535. See *State* v. *Toole,* 26 Mont. 22, 33.

Although there is evidence which would warrant a finding that the defendant union represents "practically the whole of the longshoremen of the port" of Boston, this has not been found as a fact. It is apparent both from the frame of the bill, the trend of the trial as disclosed on the record, and the findings of the single justice, that the hearing did not proceed upon the theory of an unlawful monopoly or a violation of the Sherman anti-trust act. Those issues were not tried. Such questions cannot be raised at this stage of the case and they are not passed upon. Hence, it is not necessary to consider St. 1911, c. 503, *Connors* v. *Connolly,* 86 Conn. 641, 651, *Loewe* v. *Lawlor,* 208 U. S. 274, 293, and *United Shoe Machinery Co.* v. *La Chapelle,* 212 Mass. 467, upon which the plaintiffs' now seek to rely. See also *Russell* v. *Amalgamated Society of Carpenters & Joiners,* [1910] 1 K. B. 506; *S. C.* [1912] A. C. 421.

*Decree dismissing bill affirmed.*