MICHAEL J. TRACEY & another *vs.* ROBERT M. OSBORNE & others.

Suffolk.    December 5, 1916. — January 24, 1917.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Labor. Labor Union. Voluntary Association. Equity Pleading and Practice,* Appeal, Master's report. *Contract,* Validity. *Unlawful Interference. Equity Jurisdiction,* To enjoin unlawful interference.

A master, to whom was referred a suit in equity by one unincorporated labor union against another, to enjoin the defendants from seeking to cause the breaking of certain agreements made between certain manufacturers and the plaintiffs' union when the defendants were members of it, found that under the constitution of the plaintiffs' union, which was national in its scope and organization, the management of its affairs and the control of its local organization were vested in a general executive board; that a local "joint council" was given authority by the constitution to make such agreements as those which formed the basis of the suit "to be issued by the general executive board;" that at a regular meeting of the general executive board a "resident committee" of the board was appointed, to which by vote "all the powers of the general executive board so far as Massachusetts was concerned were delegated," that there was no special constitutional provision for such a resident committee; that the agreements in question were indorsed unanimously by the resident committee, were printed by the general executive board and were furnished to the joint council and, after some immaterial amendments, were executed on the plaintiffs' behalf by a member of that council. The master also found "that the peace agreements were all prepared and executed in the manner and by the agencies provided by the constitution of the" plaintiffs' union. The report was confirmed and there was a decree for the plaintiffs. The defendants appealed. The evidence was not reported. *Held,* that the subsidiary findings as to the

execution of the agreements were not inconsistent with the finding that they were properly prepared and executed, and that that finding must stand.

In the absence of special findings on the subject, *it was presumed,* in favor of the master's general findings above described, that the powers exercised by the resident committee in behalf of the general executive board might be delegated by that board.

Agreements between members of an unincorporated labor union and manufacturers, to continue in force one year with a stipulation for further extension, providing for the adjustment of differences which might arise between the contracting parties, that there should be no strikes or lockouts or cessation of work pending a decision as to differences, that all work of the manufacturers in certain designated rooms and departments should be done by members of the union,'and that, so long as there was a sufficient number of these to do the work, no other help should be employed by the manufacturers, are valid. Following *Hoban* v. *Dempsey,* 217 Mass. 166.

A suit in equity may be maintained by the members of the labor union above described against the members of another unincorporated union to enjoin the defendants from taking any action to cause or intended to cause the breaking of such agreements.

On an appeal by the defendants from a final decree granting the injunction prayed for in such a suit, it appeared that, after the filing of a master's report, the defendants amended their answer by adding allegations that the agreements above described were in furtherance of a monopoly and in violation of St. 1911, c. 503. This court in affirming the decree did not consider such defences, because it was manifest that the trial before the master had not dealt with such issues and that his report was not framed with a view to a determination of them and was lacking in a finding of facts essential for a decision of them.

BILL IN EQUITY, filed in the Supreme Judicial Court on September 20, 1915, by officers of the United Shoe Workers of America, an unincorporated voluntary association and trade union, who brought the suit in behalf of that association against the officers and members of the Lasters' Protective Union of Lynn, an unincorporated voluntary trade union, seeking to enjoin the defendants from taking any action to cause or intended to cause the breaking of certain agreements made between the plaintiffs, when the defendants were members of their union, and certain manufacturers in Lynn relative to the employment and treatment of labor.

The suit was referred to a master. As to the plaintiffs, he found that "the United Shoe Workers of America . . . is a voluntary unincorporated trade union, organized in September, 1909. It has to do solely with the shoe industry, and is composed wholly of shoe workers. It is national in scope. The headquarters of the parent organization are in the city of Boston, while it has subsidiary branches in many of the principal shoe manufacturing centres of the United States in the shape of local unions of its

members, or joint councils composed of two or more of such local unions, all operating under charters granted by its general executive board. It has a written constitution. . . . Under its constitution the management of its affairs and the control of the operations of its local unions and joint councils are vested in this general executive board, whose decision on all matters pertaining to the organization is final, subject to an appeal to the next convention of the association or to its entire membership, on certain terms and by certain prescribed methods.

"At a regular meeting of the general executive board held in Boston January 1, 1915, its four Massachusetts members were, by vote, made the 'resident committee' of the board for the ensuing six months, and by the same vote all the powers of the general executive board so far as Massachusetts was concerned were delegated to such committee. There is no specific constitutional provision for such resident committee."

Other findings of the master are described in the opinion.

Exceptions by the defendants to the master's report were heard by *Carroll*, J., and by his order an interlocutory decree was entered overruling the exceptions and confirming the report.

By order of *De Courcy*, J., a final decree was entered granting the injunction prayed for by the plaintiffs. The defendants appealed.

*P. A. Kiely*, for the defendants, submitted a brief.

*F. W. Mansfield*, for the plaintiffs.

RUGG, C. J. The plaintiffs are members and representatives of a labor union called the United Shoe Workers of America. The defendants, formerly members of the same union, are now members and representatives of another union called the Lasters' Protective Union of Lynn. Both these unions are voluntary unincorporated associations. This is a suit in equity whereby the plaintiffs seek to restrain the defendants from taking any action to cause or intended to cause any parties to break certain agreements, to which the plaintiffs are parties, to employ members of the plaintiff union, and particularly from calling any strike directed to that end.

The case was sent to a master, whose findings so far as now material are that for several years previous to 1915 there existed

in the city of Lynn several local branches of the United Shoe Workers of America.  Composed of three delegates from each of these branches was a sub-organization known as Joint Council No. 1, designed to secure concentration of authority and efficiency of administration.  It was authorized by the constitution of the union "to make agreements with manufacturers when prices and conditions are satisfactory to said Joint Council or Local Union.  Said agreement [sic] to be of a uniform nature and to be issued by the General Executive Board."  In the early part of 1915, at the initiative of one Enwright, the publisher of a newspaper in Lynn, there was a movement for the purpose of formulating some agreement between manufacturers and workmen to promote industrial peace.  As a result an agreement popularly known as the "Peace Pact" was framed.  These agreements, identical in form, each to be signed by a representative of the Joint Council No. 1 of the United Shoe Workers of America and by some manufacturer who chose to adopt it, were to continue in force one year with a stipulation for further extension, and provided for the adjustment of any differences that might arise between the contracting parties, that there should be no strikes or lockouts or cessation of work pending a decision as to differences, that all work of the employer in certain designated rooms and departments should be done by members of the United Shoe Workers of America, and that, so long as there was a sufficient number of these to do the work, no other help should be employed.  Other clauses regulated different aspects of the relations between the employer and the members of the plaintiff union.

The master found that the agreements were all prepared and executed in the manner and by the agencies provided by the constitution of the United Shoe Workers of America.  There are no subsidiary findings inconsistent with this general conclusion and, since the evidence is not reported, it must stand.  The form of the agreement was indorsed unanimously by the resident committee of the general executive board and copies of it were printed by the general executive board and furnished to the Joint Council No. 1.  This might have been found to be a substantial compliance with terms of the governing article of the constitution.  The general executive board appears to have acted in some

respects through what is termed a resident committee. Its powers by custom or otherwise are not set out in the master's report. In the absence of specific findings it may be presumed in favor of the general finding that the powers here exercised may be delegated by the general executive board. So far as the agreement was modified after approval by the general executive board, if indeed in any instance there was a material change, it does not appear to affect any of the manufacturers referred to in the report as having signed the contract.

The contract in its general outlines is similar to that held legal in *Hoban* v. *Dempsey*, 217 Mass. 166. In this aspect the case at bar is governed by that decision. It is putting in the form of an agreement a stipulation that one named labor union shall have, so long as it is able to do it, all the work of the particular employer, a demand held to be within the limits of allowable competition in *Pickett* v. *Walsh*, 192 Mass. 572, 584. The contract does not appear to have been made for the purpose of injuring the defendants, who then were members of the plaintiff union, or for any purpose other than the mutual advantage of the contracting parties. It was entered into freely and not under compulsion or coercion. It was not entered into with a purpose to harm anybody. This does not infringe upon the principles established in *Berry* v. *Donovan*, 188 Mass. 353, and *Shinsky* v. *Tracey, ante,* 21, for decisive facts there present are not found in the case at bar. The case at bar also is distinguishable from *Folsom* v. *Lewis*, 208 Mass. 336, *Hanson* v. *Innis*, 211 Mass. 301, and similar decisions.

The finding that the defendants have sought to exert pressure upon some of the employers to break their contracts of employment with members of the plaintiff union is direct and unequivocal and is supported by ample facts set forth in the report. Such conduct was a clear invasion of rights of the plaintiff for which the law will provide a remedy. *Berry* v. *Donovan*, 188 Mass. 353. *Truax* v. *Raich*, 239 U. S. 33, and cases cited at page 38.

The rights secured to the plaintiffs under their contracts are such as are protected in the ordinary case by injunction. *Beekman* v. *Marsters*, 195 Mass. 205. This principle often has been applied to labor cases and is pertinent to the facts here disclosed. *Bogni* v. *Perotti*, 224 Mass. 152, and cases cited at page 153. *Fairbanks*

v. *McDonald,* 219 Mass. 291. *Burnham* v. *Dowd,* 217 Mass. 351. *Reynolds* v. *Davis,* 198 Mass. 294.

The defence of monopoly and violation of St. 1911, c. 503, was added to the answer by amendment after the master's report was filed. It is manifest that the trial did not proceed on these issues. The mind of the master was not directed to them. The report is not framed with a view to the determination of these questions, and it is lacking in a finding of facts directed to that end and essential for a decision. Hence, it is unnecessary to consider these points. See *Hoban* v. *Dempsey,* 217 Mass. 166, and cases cited at page 171.

*Decree affirmed with costs.*