Allread, J.
Benjamin C. Solt, a master painter, obtained a contract from the Photo Play and Amusement Company, the owner and builder of the Majestic Theater, for the finishing and painting of me woodwork of the lobby and canopy, or marquise, for the sum of $270.
The building was constructed by different contractors under plans and specifications adopted by *438 the owner. These plans and specifications included a notice to bidders,'containing the following clause:
“Union Labor: Each and every contract entered into under these specifications and accompanying plans shall be executed in every detail by union labor.”
Solt personally undertook to do most of the work embraced in his contract. Later he was assisted by a union painter procured by the superintendent of construction.
Solt admits that he had not for several years held a union card; nor had he signed the union scale of wages.
It appears that at the time Solt obtained his contract the work upon the building was nearing completion, and the time had been fixed and published for the opening of the theater. Work upon other contracts was being executed wholly by union labor. Complaint having been made to Local No. 248 of the National Decorators’ and Painters’ Association, one of the plaintiffs in error, an investigation was had and resulted in the appointment of a committee who called upon the representatives of the owner and notified them that unless Solt was withdrawn the unions would declare the owner unfair and call off all union labor then at work upon the building.
Neither in the petition nor in the evidence does it appear that there was any threat of violence, of boycotting, or of preventing the employment of other workmen to complete the büilding. The sum and substance of the demand and threat was merely the withdrawal of'union labor from the work.
*439 This case presents a somewhat unusual feature.
Modern statutes and modern decisions, we think, recognize the rightful place of labor unions as organizations in the advancement of the interest of the laboring classes, and their rights and limitations have been frequently considered. The weight of authority'upholds the right of a labor union, in the absence of an inconsistent contract, to advise and procure the withdrawal of union labor from a given work, either singly or in combination, where no violence or other unlawful means are employed and where the object of the strike is not unlawful. The Fulworth Garment Co. v. The International Ladies' Garments Workers' Union, 15 N. P., N. S., 353; Kemp v. Division No. 241, 255 Ill., 213; Iron Molders' Union v. Allis-Chalmers Co., 166 Fed. Rep., 45; I. F. Parkinson Co. v. Building Trades Council, 154 Cal., 581, and 16 Ruling Case Law, 444-460.
A strike is defined as “The act of a party of workmen employed by the same master, in stopping work all together at a prearranged time, and refusing to continue until higher wages, or shorter time, or some other concession is granted to them by the employer.” (Black’s Law Dictionary.)
Bouvier defines a strike as “A combined effort by workmen to obtain higher wages or other concessions from their employers, by stopping work at a preconcerted time.”
In Kemp v. Division No. 241, supra, it is said at page 222: “The threat made by the committee that the members of the union would call a strike of the employees of the Railways Company unless their demands were complied with, meant no more *440 than that the union employees would.be notified to quit in a body at a definite time if the non-union employees were retained in the service.”
So here the threat of the committee of the Locals to call a strike meant no more than that they would call off the union workmen from the building if their demands were not met by the employer.
This brings us to the legality of the purpose of the proposed strike.
The owner had voluntarily agreed to the exclusive employment of union labor in the execution of every detail. The consideration for this agreement is based upon the presumed advantage arising out of the employment of union labor. The contract was for the benefit of union labor. After the contract had been recognized and acted upon by union workmen, the agreement became a valid obligation. The employer had obtained the benefit of the provision throughout the work of construction and up almost to the time of completion of the building.
The recent cases sustain the validity of contracts made by the employer for the exclusive employment of union labor, particularly where the supply of union labor is adequate or where provision is made for the unionizing of workmen in case of shortage. Natl. Fireproofing Co. v. Mason Builders’ Assn., 169 Fed. Rep., 260; Jacobs v. Cohen, 183 N. Y., 207; Mills v. U. S. Printing Co., 99 App. Div. (N. Y.), 605; Hoban v. Dempsey, 217 Mass., 166, and 16 Ruling Case Law, 426.
To the contrary are Curran v. Galen, 152 N. Y., 33, and Berry v. Donovan, 188 Mass., 353.
*441 We are not required to express an opinion as fo the natural and constitutional right of labor unions to interfere between employer and nonunion employes. In this case the employer agreed to employ union labor exclusively. There was no duress or unfair means employed to secure the contract. The contract was voluntary, and was by implication a recognition of the right of the Locals to act on behalf of and in the interests of union labor. The condition in the contract for the exclusive employment of union labor entered into and became a condition of employment in all branches of the building contract, and the union workmen had the legal right to withdraw from the work at any time the condition was violated.
This was the situation as between the union labor employed on the building and the employer, and we think it clear that the Locals and the committee acting on their behalf had the right, when the condition of employment was violated, to order the withdrawal of union labor from the work.
There is a question raised as to whether Solt’s obtaining the contract and working upon the job was itself a violation of the employer’s contract with union labor.
Solt undertook personally to do most of the work contracted for, although he admits that he was not affiliated with any labor organization and had signed no union wage scale. He was of the opinion that his taking the contract was not a violation of the contract for the employment of union labor, and the owner and its agents were of the same opinion, and acted in good faith, although, we believe, mistakenly.
*442 Whatever might have been Solt’s right as contractor, and as overseer or superintendent of the work, we think under a fair construction of the agreement as to union labor there was a violation of the contract when he undertook to do the work himself. The owner in contracting with union labor clearly contemplated that the work in every detail should be performed by union labor. This contract could not, in our judgment, be fulfilled by letting the work to one or more nonunion contractors to personally perform the labor.
Solt testifies that he examined the portion of the specifications relating to painting, before he took the contract. The specifications as to painting referred to the notice to bidders which contained the provision as to the exclusive employment of union labor.
While Solt testified that nothing was said in his verbal contract as to the employment of union labor, yet we think it sufficiently appears from his own testimony that he knew that union labor was required to be employed upon all features of the building.
Solt’s rights are, therefore, under all the evidence, clearly subject to the condition as to the exclusive employment of union labor, and his right would, therefore, rise no higher than that of his employer.
But even if Solt took his contract in ignorance of the condition expressed in the owner’s contract, as to union labor, then his right of action, if any, would be against the owner and not against the labor organization.
*443 The plaintiffs in error having, therefore, acted within their legal rights, the threatened strike was not illegal and- the discharge of Solt so far as the plaintiffs in error were concerned is damnum absque injuria. 16 Ruling Case Law, 460.
The fact that certain members of the Locals obtained employment after the discharge of Solt does not change the legal status. There is no charge of malice; and it was a natural and anticipated result that some of the union would be benefited by the performance of the union-labor contract.
Plaintiffs in error moved at the close of the plaintiff’s evidence and also at the close of all the evidence for an instructed verdict in their favor. The court overruled the motions and submitted the case to the jury, which returned a verdict for $500. A judgment was rendered upon the verdict, and error is prosecuted to this court.
We have reached the conclusion that the motions of the plaintiffs in error for a directed verdict should have been sustained.
The judgment of the court of common pleas is therefore reversed; and final judgment in favor of plaintiffs in error will be ordered.

Judgment reversed, and judgment for plaintiffs in error.

Kunkle and Ferneding, JJ., concur.