DAVID SHINSKY *vs.* DANIEL L. O'NEIL & others.

Essex.  November 18, 1918. — February 4, 1919.  ·

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Unlawful Interference.  Labor Union.*

In a suit in equity by a laster, who had been employed for many years in shoe factories, against the officers and members of a lasters' labor union, to enjoin the defendants from alleged unlawful interference with the plaintiff's employment by preventing the proprietors of shoe factories from employing him, it does not show an unlawful purpose in the defendants' labor union, that "A part of the policy of the union is to secure and increase in number what are sometimes called 'closed shops,' that is, shops where union members and no

others are employed, and that one of the purposes of this policy is to enlarge and strengthen the union organization," because enlarging and strengthening the union organization is a necessary incident to a successful combination to secure the advantages of bargaining for the common benefit; and so is increasing the number of what are called "closed shops."

In the same case it also was *held* that there is nothing unlawful in a custom or practice of such a labor union not "to refuse membership to workmen wishing to join the union, even though there are members of the union out of work who would like employment," this being a means of enlarging and strengthening the union organization and of having a sufficient number of men on hand to supply union workmen where an employer has agreed that all his work shall be given to members of the union or that a preference shall be given to such members.

In the same case it was *pointed out* that the suit was in no way founded on the Sherman anti-trust act nor on St. 1911, c. 503, in regard to monopolies, and that therefore there was no occasion to consider the effect of those statutes.

BILL IN EQUITY, filed in the Supreme Judicial Court on April 5, 1917, by a laster, who had been employed for many years in shoe factories in Lynn, against the officers and members of an unincorporated association called Lasters' Local Number 1, praying (1) "That the defendants be enjoined forthwith from interfering or from combining, conspiring or attempting to interfere with the plaintiff in obtaining and holding employment, and from intimidating or threatening persons who might employ or desire to employ the plaintiff, and from in any way hindering the plaintiff in obtaining or continuing in employment." (2) "That an account be taken of the damage caused the plaintiff by the acts" complained of, (3) for costs and (4) for further relief.

The case was referred to a master, who filed a report containing the findings that are quoted and described in the opinion. No objections nor exceptions to the master's report were filed. The case was heard upon the master's report by *Jenney*, J., who made an interlocutory decree that the master's report be confirmed. Later by order of the judge a final decree was entered ordering that the bill be dismissed with costs to the defendants. The plaintiff appealed.

*H. D. Linscott*, for the plaintiff.

*F. W. Mansfield*, for the defendants.

LORING, J. The plaintiff in this case (the same person who was the plaintiff in *Shinsky* v. *Tracey*, 226 Mass. 21) is a laster who had been expelled from the association known as the United Shoe Workers of America and from the local union of that association in the city of Lynn. After the decision in *Shinsky* v. *Tracey,*

he applied on February 1, 1917, to the Adams Shoe Company for employment as a laster. One Benson, who had authority to hire and discharge men for that company, refused to employ him, "feeling bound to comply with the peace pact and fearing that there would be a strike if he employed the plaintiff . . . unless he [the plaintiff] had a permit from the union. The plaintiff, feeling that he could not get such a permit, went away." In March, 1917, the plaintiff applied to A. Fisher and Son for employment as a laster. One Daley had authority to hire and discharge men for this firm. The master made the same finding with respect to Daley that he made with respect to Benson. On April 2, 1917, the plaintiff applied to the Johnson and Wright Shoe Company for employment as a laster. Hedlund had authority to hire and discharge men for this company. Hedlund at first employed the plaintiff, but, on finding out who he was, discharged him. The master found that, "in discharging the plaintiff, [Hedlund] was actuated by a desire to carry out the real wishes of Fish and the union and thus avoid trouble with the union." Fish was the business agent of the local union of the United Shoe Workers of America. Hedlund had conferred with him as to the action he had better take on the plaintiff's application for work. The Adams Shoe Company, A. Fisher and Son and the Johnson and Wright Shoe Company were shoe manufacturers in Lynn. Each of the first two had a peace pact agreement with the United Shoe Workers of America, and the other had a price list agreement with them. The peace pact agreement provided that no person should be employed "other than members in good standing of the United Shoe Workers of America so long as the Local Union . . . are able to furnish help to do said work." The price list agreement provided that all the work should "be given to members in good standing with Lasters' Local Number 1, United Shoe Workers of America."

The case came before the Superior Court on the report of a master, to which no exceptions were taken. A decree was entered in the Superior Court dismissing the bill, and the case is here on an appeal from that decree.

The bill in this suit is not founded on the Sherman anti-trust act (26 U. S. Sts. at Large, 209) nor on St. 1911, c. 503. We have no occasion therefore to consider questions under those statutes which might be thought to arise in this case.

The plaintiff has not undertaken to question the validity of a peace pact agreement between an employer and a labor union. The validity of such an agreement was established by the decision of this court in *Hoban* v. *Dempsey,* 217 Mass. 166. Nor has the plaintiff undertaken to argue against the validity of a clause in an agreement between an employer of labor and a labor union which provides that all work shall be given by the employer to the union. The validity of such an agreement is a necessary corollary of the decision made in *Pickett* v. *Walsh,* 192 Mass. 572.

What the plaintiff has contended is that this case is taken out of these decisions by the particular findings made by the master.

He relies in the first place on what was found by the master with respect to the general policy of the United Shoe Workers of America. The master begins his report by stating what the general policy of the United Shoe Workers of America is. He found in the first place that "The United Shoe Workers of America . . . seek as a part of their general policy to secure all the work possible for their members, rather than to have it go to unaffiliated workers, and to obtain the highest prices possible for their work." After stating that this is "a part of their general policy" he goes on with this finding: "A part of the policy of the union is to secure and increase in number what are sometimes called 'closed shops,' that is, shops where union members and no others are employed, and one of the purposes of this policy is to enlarge and strengthen the union organization." The plaintiff's contention on these findings is that the master has found that a part of the general policy of the union is legal and a part illegal; that it follows from this that the policy as a whole is illegal and for that reason this case is taken out of *Hoban* v. *Dempsey* and the doctrine of *Pickett* v. *Walsh.*

We are not able to accede to this contention of the plaintiff. It is established that workmen can combine to get the advantage of bargaining for their common benefit in respect to the terms and conditions upon and under which they should work. It is further established that, if they are successful in getting the bargain they wish, they can insert in the agreement setting forth that bargain a clause providing that all work of the employer shall be given to them or that a preference shall be given to them in the employment

of workmen.  So much is established.  Workmen cannot hope to succeed in securing the advantages of bargaining for the common benefit unless their combination, their organization, their union (call it what you please) is a large and a strong one.  If any member of the combination or union were to testify that he did not wish "to enlarge and strengthen the union organization," no one would believe him.  No one would believe that a member of a labor union organized to secure the advantages of bargaining for the common benefit could hope to succeed unless all the members of the union did their best "to enlarge and strengthen the union organization."  So far as this finding of the master is concerned we are of opinion that the policy of the United Shoe Workers of America "to enlarge and strengthen the union organization" is an incident and a necessary incident to a successful combination to secure the advantages of bargaining for the common benefit.  What we have said with respect to this finding of the master is also true of the other finding relied upon by the plaintiff, namely, "a part of the policy of the union is to secure and increase in number what are sometimes called ' closed shops.' "  We understand by this that the master means that it is a part of the policy of the United Shoe Workers of America "to secure and increase in number" shops where the employer agrees to give all the work to members of the union, or at any rate to make a preference in their favor in employing workmen.

The purposes of the action in question in *Plant* v. *Woods,* 176 Mass. 492, and in *Berry* v. *Donovan,* 188 Mass. 353, are quite different from the purposes which are found by the master to have been included in the general policy of the United Shoe Workers of America set forth above.  In both *Plant* v. *Woods* and in *Berry* v. *Donovan* the action taken was taken to force in the one case a number of workmen and in the other a single workman to join a particular union.  That was the sole purpose of the action taken in those cases.  The decisions in those cases are not decisive of the case at bar where there is a general policy to secure the advantages of bargaining for the common benefit or, as the master puts it, "to secure all the work possible for their members, rather than to have it go to unaffiliated workers, and to obtain the highest prices possible for their work," and where as an incident to that general policy it is found by the master that it was the purpose

of the union "to secure and increase in number what are sometimes called 'closed shops' . . . and . . . to enlarge and strengthen the union organization." By the true construction of the master's report it cannot be taken that his statement of the policy of the United Shoe Workers of America is anything more than this.

The plaintiff has insisted that there is another finding of the master which takes this case out of the decision in *Hoban* v. *Dempsey* and the doctrine of *Pickett* v. *Walsh.* That finding is this: "It is then a part of the policy of the union to endeavor to induce the workman to become a member of the union or to make himself in good standing in it, and, failing that, to report to the employer that the workman is not a member of the union in good standing. It is not the custom of the union to refuse membership to workmen wishing to join the union, even though there are members of the union out of work who would like employment; but of course the admission of new members is optional with the union." It is the plaintiff's contention that this finding means "that the union tries to induce the workman to join and admits him regardless of whether its own members are out of work and without employment. It is not the work, but the man and the closed shop which the union really seeks, in order to 'enlarge and strengthen the union organization.'" A union which has an agreement with an employer providing (*inter alia*) that all the work shall be given to members of the union or that a preference shall be given to members of the union in employing workmen, would open itself to a serious criticism if it refused to admit to membership men qualified to perform the work done by members of the union in question. By having as a part of its policy "the custom" of not refusing membership to workmen who wished to join, such a union avoids subjecting itself to this criticism. We are of opinion that the finding of the master here relied upon cannot be taken to mean anything more than this.

The last finding of the master which is relied upon by the plaintiff to take this case out of *Hoban* v. *Dempsey* and the doctrine of *Pickett* v. *Walsh,* is this: "I find that, as a consequence of the case of *Shinsky* v. *Tracey,* 226 Mass. 21, and the proceedings leading up to that suit, the defendants, other than Daley and Hedlund, and the union generally were and are in a state of business hostility to the plaintiff." It is plain from the master's finding which

follows immediately after this finding, that he did not intend by this finding to state that the refusal to employ the plaintiff was based on "hostility to the plaintiff." Immediately after this finding the master made the following finding: "But I do not find that, in the three incidents related in this report, the defendants or the union did anything adverse to the plaintiff that they would not have done had the plaintiff been a non-member of the union against whom no such hostility existed. Whether the plaintiff could have obtained admission into the union, as an ordinary non-member could, must be a matter of conjecture, because he made no application for admission." It is plain, therefore, that the master's finding went no further than a finding that the union insisted upon an enforcement of the clauses in their agreement with the Adams Shoe Company and with A. Fisher and Son which provided that in employing the lasters preference should be given to members of the union, and of the clause in their agreement with the Johnson and Wright Shoe Company, that all the work in the lasters' department should be given to members of the Lasters' Local No. 1 of the United Shoe Workers of America.

For these reasons we are of opinion that there is nothing in the master's report which takes this case out of the decision made in *Hoban* v. *Dempsey* and the doctrine of *Pickett* v. *Walsh*, and that apart from the Sherman anti-trust act and St. 1911, c. 503 (upon which we intimate no opinion) the agreements between the three employers of lasters here in question and the United Shoe Workers of America were valid agreements.

The result is that the decree appealed from must be affirmed with costs, and it is

*So ordered.*