STEVEN D. KARCHMAR & others *vs.* CITY OF WORCESTER
& others.

Suffolk.    February 6, 1973. — September 18, 1973.

Present: TAURO, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Municipal Corporations,* Collective bargaining. *Contract,* Collective
bargaining contract. *Labor. Civil Service. Constitutional Law,* Due pro-
cess of law, Equal protection of laws. *Equity Pleading and Practice,*
Declaratory proceeding. *Moot Question. Words,* "Classified service,"
"Employees."

The history of G. L. c. 149, §§ 178G-178N, as amended through St. 1970,
c. 463, § 1, authorizing collective bargaining agreements between
municipalities and their employees, indicates a clear legislative intent
that such agreements should cover all employees in an appropriate
bargaining unit, those employees having civil service status as well as
those not, and that all employees in a unit should contribute to the ex-
pense of negotiating, administering and enforcing the agreements for
the benefit of the employees collectively, the contribution of union
members to be through payment of union dues, and that of nonunion
members to be through payment of agency service fees. [126-132]
Under G. L. c. 149, §§ 178G-178N, as amended through St. 1970, c. 463,
§ 1, collective bargaining agreements between a city and a union as the
exclusive bargaining agent of appropriate bargaining units of different
groups of city employees, containing a provision that "each employee
of the bargaining unit who is not a member of the Union . . . shall be
required, as a condition of employment, to pay a monthly agency ser-
vice fee . . . to the Union," were valid [126, 136]; there was no merit in
contentions of the city that the statement in G. L. c. 149, § 178N, that
"[n]othing in . . . [§§ 178F to 178M], inclusive, shall diminish the
power and authority of the civil service commission" required a deci-
sion that such agreements were invalid as against civil service
employees of the city [132-133]; that the option given nonunion em-
ployees by G. L. c. 180, § 17G, as to the method of payment of the ap-
plicable agency service fee gave them an option to elect whether to be-
come obliged to pay it [133]; and that as applied to such employees the
statutes authorizing the agency service fee provisions violated the due
process and equal protection clauses of the Fourteenth Amendment to
the United States Constitution [135-136].
Upon a reservation and report by the county court without decision of a
suit in equity for declaratory relief in which neither the plaintiffs' bill
nor the defendants' answer questioned the constitutionality of statutes

involved, and the Attorney General was not "notified of the pro-
ceeding" under G. L. c. 231A, § 8, the defendants were not entitled to
raise constitutional questions before this court. [134-135]

This court expressed its opinion on issues involved in an adversary pro-
ceeding respecting short term collective bargaining agreements between
a city and its employees, although the agreements expired after argu-
ment, where the issues were of importance and of first impression, and
were fully argued. [136]

BILL IN EQUITY filed in the Supreme Judicial Court for the
county of Suffolk on May 18, 1972.

The suit was reserved and reported without decision by
*Reardon,* J.

*Warren H. Pyle* for the plaintiffs.

*Charles A. Abdella,* Assistant City Solicitor, for the City
of Worcester & others.

*James J. Cody, Jr.,* for the Labor Relations Commission
& *Augustus J. Camelio,* for the American Federation of
State, County and Municipal Employees, amici curiae, sub-
mitted briefs.

QUIRICO, J.   The plaintiffs, by this bill in equity under
G. L. c. 231A, and the defendants, by their answer thereto,
seek declaratory relief in a controversy arising out of a col-
lective bargaining agreement relating to municipal em-
ployees. G. L. c. 149, §§ 178G-178N, as amended through
St. 1970, c. 463,.§ 1. The case is before us for decision on the
bill and answer, having been reserved and reported by a
single justice of this court without decision.

The named plaintiffs are three individuals who hold the
offices of executive secretary, president, and treasurer,
respectively, of the United Municipal Employees, Local 495,
Service Employees International Union, AFL-CIO. Local
495 is a voluntary, unincorporated employee organization as
defined by G. L. c. 149, § 178G. It has about 800 members
"all of whom are too numerous to join individually . . . but
who have a common interest with the . . . [named plain-
tiffs] and who are fairly and adequately represented by the
named . . . [plaintiffs]." The plaintiffs will be referred to
herein collectively as Local 495.

The defendants are the city of Worcester, its city manager and its city treasurer, herein collectively referred to as the city.

At all times material to this case Local 495 has been the exclusive bargaining agent for five different collective bargaining units, each covering a different group of the employees of the city. There are about 1,600 employees in the five units combined, and all but 103 of them are protected by civil service status under G. L. c. 31. On and prior to December 27, 1971, the city and Local 495 had entered into three collective bargaining agreements which together covered the five bargaining units for a term to expire on July 7, 1973. Each of the contracts contained the following language (agency service fee provision): "Effective the ninetieth day following the beginning of employment or the sixtieth day following formal execution of this agreement, whichever is later, each employee of the bargaining unit who is not a member of the Union in good standing shall be required, as a condition of employment, to pay a monthly agency service fee during the life of this agreement to the Union in an amount equal to the monthly dues; provided, however, that such fee shall not exceed $6.00 per month."

The basic controversy between the parties is whether the agency service fee provision has any application to those employees of the five bargaining units who enjoy civil service status. Local 495 contends that it applies to all employees of the bargaining units who do not belong to the union, regardless of whether they are included in civil service. The city contends that it applies only to those relatively few employees of the bargaining units who are not included in civil service. For the reasons discussed below, we hold that the position of Local 495 is the correct one.

The statutory labor relations law applicable to municipal employees in the Commonwealth is contained primarily in G. L. c. 149, § 178G through 178N, inserted by St. 1965, c. 763, § 2, and it was amended in a manner affecting this case by St. 1970, c. 463, § 1. Section 178H states in part that "[e]mployees shall have, and be protected in the exercise of,

the right to self-organization, to form, join or assist any employee organization, to bargain collectively through representatives of their own choosing on questions of wages, hours and other conditions of employment and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

Section 178G, as originally enacted in 1965, defined the word "employee" as used in §§ 178H through 178N to mean "any employee of a municipal employer, *whether or not in the classified service of the municipal employer,* except elected officials, board and commission members, police, and the executive officers of any municipal employer" (emphasis supplied). The definition continues the same except for the deletion therefrom of the word "police" by St. 1966, c. 156. The words "classified service" are not further defined in §§ 178H through 178N. However, the word "classified" is commonly used with reference to municipal civil service employees, particularly in G. L. c. 31, relating to civil service. The words "classified civil service," "classification," "classes," "classified," or "classified public service," appear in the following sections of c. 31: 1, 2A, 3, 4, 15, 15B, 22, 23, 33, 34, 38, 46H, and 49A. Section 1 thereof defines the words "civil service" to mean "classified civil service provided for by this chapter and the rules made thereunder." When enacting §§ 178G through 178N in 1965, the Legislature could easily have expressly excluded civil service employees from the definition of "employees," if it had so intended. It did not do so, but instead expressly negatived any such intention by its precise choice of words. We therefore conclude that in originally enacting §§ 178G through 178N the Legislature intended the word "employees" to include civil service employees.

Section 178H provides that the "employee organization recognized by a municipal employer or designated as the representative of the majority of the employees in an appropriate unit," which in this case means Local 495 as to each of the units involved, "shall be the exclusive bargaining agent for all employees of such unit, and shall act, negotiate

agreements and bargain collectively for all employees in the unit, and shall be responsible for representing the interests of all such employees without discrimination and without regard to employee organization membership." Here again the Legislature used very clear language which permits no exception or exclusion of civil service employees from the operation and effect of this section. Local 495 is therefore the exclusive bargaining agent for all employees of each of the five units, whether members of the union or not, and whether in the civil service or not. *Hamer* v. *Nashdwena Mills, Inc.* 315 Mass. 160, 164-165. *Moen* v. *Director of the Div. of Employment Security,* 324 Mass. 246, 249-250.

As originally enacted, § 178L prohibited municipal employers from committing five types of acts commonly referred to as constituting unfair labor practices. By St. 1970, c. 463, § 1, the Legislature added at the end of the description of the five prohibited acts the following provision: "(6) nothing in this chapter shall prevent a municipal employer, which has duly accepted . . . [G. L. c. 180, § 17G], from requiring, as a condition of employment, during the life of a collective bargaining agreement so providing, the payment . . . of an agency service fee to the . . . exclusive bargaining agent for the unit in which such employee is employed; provided, however, that such agency service fee shall not be imposed unless the collective bargaining agreement requiring its payment as a condition of employment has been formally executed, pursuant to a vote of a majority of all employees in such bargaining unit present and voting. Such agency service fee shall be proportionately commensurate' with the cost of collective bargaining and contract administration."

General Laws c. 180, § 17G, inserted by St. 1970, c. 463, § 2, provides in part as follows: "Deductions on payroll schedules may be made from the salary of any . . . municipal employee of any amount which such employee may specify in writing . . . for the payment of agency service fees to the employee organization which . . . [is] the exclusive bargaining agent for the appropriate unit in which such employee is employed. . . . Any such authorization may be

withdrawn by the employee by giving . . . notice in writing of such withdrawal to the . . . [designated municipal officer], and by filing a copy thereof with the treasurer of the employee organization.''

On September 29, 1970, the city accepted G. L. c. 180, § 17G, by the unanimous vote of its city council. Thereafter the city and Local 495 negotiated the three collective bargaining agreements covering all employees of the five bargaining units and containing the now disputed agency service fee provisions. The agreements were ''formally executed, pursuant to a vote of a majority of all employees in [each] such bargaining unit present and voting.'' G. L. c. 149, § 178L, as amended. No question is raised about the legality of the negotiations, the votes of the employees authorizing the execution of the contracts, or the formal execution of the contracts.

Despite the 1970 statutory amendments (St. 1970, c. 463, §§ 1 and 2) expressly authorizing municipalities to enter into collective bargaining agreements containing provisions for the payment of agency service fees as a condition of employment and authorizing payroll deductions for payments of such fees on written request of employees, and despite the fact that the city and Local 495 have entered into three otherwise admittedly valid agreements containing agency service fee provisions, the city now contends that such provisions apply only to the 103 noncivil service employees out of the total of about 1,600 employees in the five units. Neither the collective bargaining agreements nor the applicable statutes contain any express language excluding civil service employees from the operation and effect of the agency service fee provision. The city asks us to read such an exclusion into the statute and agreements. It argues in support of this request (a) that the Legislature did not intend, either by the original statutes or by the 1970 amendments, to make civil service employees subject to discharge for nonpayment of an agency service fee, and (b) if it did so intend, the statutes thus construed would be unconstitutional. We reject both arguments.

Prior to May 28, 1970, the Legislature passed and sent to the Governor House Bill No. 4658 which would have inserted in the General Laws a requirement that all cities and towns, except Boston,[1] deduct an agency service fee from the salary of each of its employees if the collective bargaining agreement covering such employee provided for such a fee. However, the municipal collective bargaining statute (G. L. c. 149 §§ 178G through 178N) then in effect contained no specific authorization for the inclusion of an agency service fee provision in such agreements, and the bill as sent to the Governor did not correct that deficiency. On May 28, 1970, the Governor returned the bill to the Legislature without his signature and with an accompanying message (House Bill No. 5749) which is printed in full in the margin of this opinion.[2] The Governor indorsed the idea of permitting

---

[1] An earlier special act (St. 1969, c. 335) required the city of Boston and the county of Suffolk to deduct agency service fees from the salaries of their employees whenever a provision for such fees was contained in a collective bargaining agreement executed "pursuant to a vote of a majority of all employees in the bargaining unit." This statute required no acceptance by the city or county. It gave no option to the employees to pay the agency service fee in any manner other than by payroll deductions, and it required no written request by the employees to authorize the deductions.

[2] The Governor's message was as follows:

"In accordance with the provisions of Article LVI of the Amendments of the Constitution, I am returning, herewith, House Bill No. 4658 entitled 'AN ACT PROVIDING THAT THE TREASURER OF A CITY OR TOWN SHALL MAKE PAYROLL DEDUCTIONS FROM THE SALARY OF EMPLOYEES AND PAY THE SAME OVER TO THE COLLECTIVE BARGAINING AGENCY AS AN AGENCY SERVICE FEE.'

"This bill would require the treasurer of each city and town, except Boston, to deduct from the salary of each employee whatever sum is provided for in a collective bargaining agreement between the city or town and employee organizations. The purpose of this bill appears to be that each employee shall pay his fair share toward the costs of representation in collective bargaining negotiations.

"The principles of this legislation are, in my view, desirable, and I endorse them. Public employee organizations should be authorized to negotiate agreements with their employer for the payment of agency service fees by non-union employees. By assuring unions of a steady income, I believe this will permit them to play a more responsible role in the collective bargaining process. Further, requirement of an agency service fee will eliminate the inequitable situation in which non-members can enjoy the same benefits that members receive from a union, and yet are not required to pay for these services.

"I, nevertheless, feel strongly that there is a sounder, more straightforward way to implement the intent of this legislation. The bill before me attempts to broaden the scope of collective bargaining through an amendment to that part of chapter 180 of the General Laws which enumerates deductions which may be made from an employee's paycheck with his consent. The imposition of an agency service fee on non-union public employees, where a collective bargaining agreement so provides,

municipalities and their employees to negotiate and enter into collective bargaining agreements which include a provision requiring nonunion members to pay an agency service fee as a condition of employment, but he recommended that the following changes be made in the bill: ˙(1) limit the proposed legislation to those cities or towns which vote to accept its provisions, (2) amend "the municipal collective bargaining law . . . to authorize specifically such an agency fee agreement," (3) give the employee "the option of requesting the treasurer to deduct the amount from his paycheck or of paying the fee in another manner of his choice," (4) provide "at least a thirty day grace period before an employee is liable for the payment of an agency service fee," and (5) permit the municipality to require proof that a union treasurer is properly bonded before paying him agency service fees deducted from the paychecks of employees. After receiving the Governor's message, the Legislature enacted St. 1970, c. 463, incorporating therein all of the Governor's suggestions.

The history, as recited above, of the statutes authorizing

marks a substantial change from current practice. I believe, first of all, that this procedure should not be imposed on the cities and towns without the consent of the local governing body. I therefore recommend language be inserted similar to existing language with respect to the procedure for payroll deductions of union dues in section 17A of chapter 180. The bill before me does not provide for local acceptance.

"I believe that the municipal collective bargaining law should be amended to authorize specifically such an agency fee agreement. I propose that the payment of an agency fee may be made a condition of employment by a collective bargaining agreement, so that the employee may retain the option of requesting the treasurer to deduct the amount from his paycheck or of paying the fee in another manner of his choice, while the union at the same time will have an effective means of enforcing payment by all persons in the collective bargaining unit. In the private sector, where full union shop agreements are permitted under the National Labor Relations Act, there, nevertheless, exists the requirement that checkoff of union dues be by individual authorization only. I believe that the amendment I propose follows this desirable procedure.

"There should be at least a thirty day grace period before an employee is liable for the payment of an agency service fee. This provision parallels federal requirements applying in the private sector.

"Finally, a municipal treasurer who is properly directed to deduct agency service fees from the checks of certain employees, and to pay over the sums so deducted to the treasurer of an employee organization, should be permitted, for his own protection, to require proof that the union treasurer is properly bonded.

"I believe that the adoption of the amendments I propose, to implement the proposals I have recommended, will provide a workable and meaningful solution to this important subject."

municipal collective bargaining agreements which contain provisions for the payment of agency service fees as a condition of employment is itself sufficient to refute the city's argument that the Legislature did not intend to impose such an obligation on civil service employees. The language used by the Governor in his message to the Legislature, and used by the Legislature in enacting the statutes, indicates a clear intent that collective bargaining agreements should cover all employees in the appropriate unit, and that all such employees should make a contribution to the expense of negotiating, administering and enforcing the agreements for the benefit of the employees collectively, the contribution of the union members to be included in their payment of union dues, and that of nonunion members to be by way of agency service fees.

The city argues that the statement in G. L. c. 149, § 178N, to the effect that "[n]othing in . . . [§§ 178F to 178M], inclusive, shall diminish the authority and power of the civil service commission," requires us to hold that civil service employees are not subject to collective bargaining agreement provisions for payment of an agency service fee to a union as a condition of their employment. We disagree.

By enacting the detailed provisions of G. L. c. 31, relating to civil service employees, the Legislature did not thereby exhaust its entire power with reference to such employees. It still had and has the power to prescribe, add to, or otherwise amend the rules of eligibility for appointment, and the conditions of, or grounds for, suspension or removal from all public employment. *Nichols* v. *Commissioner of Pub. Welfare,* 311 Mass. 125, 130-131. It may exercise that power either by amending G. L. c. 31, or by inserting appropriate provisions in other chapters of the General Laws. *Reynolds* v. *Commissioner of Commerce & Dev.* 350 Mass. 193, 194-195. It did just that when it enacted St. 1970, c. 463, § 1, amending G. L. c. 149, § 178L, to authorize contracts requiring payment of agency service fees as a condition of public employment. This amendment, even if it be treated as giving rise to a "just cause" for disciplinary action against a civil

service employee under G. L. c. 31, § 43, as amended, did not "diminish the authority and power of the civil service commission" within the meaning of G. L. c. 149, § 178N. See *National Labor Relations Bd.* v. *International Woodworkers of America,* 264 F. 2d 649 (9th Cir.), cert. den. sub nom. *International Woodworkers of America* v. *National Labor Relations Bd.* 361 U. S. 816; *National Labor Relations Bd.* v. *Hotel, Motel & Club Employees' Union,* 320 F. 2d 254 (3d Cir.).

The city argues further that, because G. L. c. 180, § 17G, inserted by St. 1970, c. 463, § 2, gives municipal employees the option whether they shall give their employer written authority to deduct the applicable agency service fee from their paychecks and pay it over to the union, they therefore have the option to elect whether they shall become subject to the obligation to pay the fee. We reject that argument. If a municipality accepts § 17G and thereafter concludes a collective bargaining agreement with the employees' union as prescribed by G. L. c. 149, § 178L, as amended, all nonunion members of the particular bargaining unit are liable to the union for the agency service fee provided in that agreement. They may pay it by authorizing payroll deductions or in some other manner of their choice, but they cannot avoid liability by merely withholding authority for the employer to deduct it from their paychecks. Their only choice is how they pay it, but, however they choose to do so, they must pay it as a condition of their employment.

While the concept of an agency service fee provision in a collective bargaining agreement covering municipal employees (G. L. c. 149, § 178L, and c. 180, § 17G, as amended and inserted, respectively, by St. 1970, c. 463) is of recent statutory origin, it is but a variation of the union shop concept which is of much earlier statutory origin. Since the enactment of the Wagner Act in 1935, Federal statutes have provided that their specific prohibitions against unfair labor practices by employers do not "preclude an employer from making an agreement with a labor organization . . . to require as a condition of employment membership therein on

or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later." See now Labor Management Relations Act, 29 U. S. C. § 158 (a) (3) (1970). In *National Labor Relations Bd.* v. *General Motors Corp.* 373 U. S. 734, it was held that this Federal statute permitted contracts with provisions substantially similar to the agency service fee provision involved in the present case. See *Retail Clerks Intl. Assn., Local 1625, AFL-CIO* v. *Schermerhorn,* 373 U. S. 746. A substantially similar statute of this Commonwealth, G. L. c. 150A, § 4 (3), enacted by St. 1937, c. 436, § 8 (3), and inserted in General Laws by St. 1938, c. 345, § 2, was upheld as a proper exercise of legislative power in *Hamer* v. *Nashawena Mills, Inc.* 315 Mass. 160, 163-166.

There are decisions in other States on questions similar to the one now before us, but those decisions are not helpful because they are based on statutes which differ materially from those of this Commonwealth. In New Hampshire it was held in effect that a statutory grant of general authority to municipalities to enter into collective bargaining contracts with unions was sufficient to authorize a contract establishing a union shop. *Tremblay* v. *Berlin Police Union,* 108 N. H. 416, 422-423. In Michigan, New Jersey, New York and Ohio, agency service fee or other union security provisions in collective bargaining agreements covering municipal employees were held invalid either because they were not specifically authorized by statute or because they were prohibited by statute. *Smigel* v. *Southgate Community Sch. Dist.* 388 Mich. 531.[3] *New Jersey Turnpike Employees' Union* v. *New Jersey Turnpike Authy.* 117 N. J. Super. 349. *Petrucci* v. *Hogan,* 5 Misc. 2d (N. Y.) 480. *Hagerman* v. *Dayton,* 147 Ohio St. 313.

We come now to the argument made by the city in its brief that the statutes authorizing an agency service fee provision

---

[3]This decision by the Supreme Court of Michigan on November 29, 1972, reverses the 1970 decision of the Michigan Court of Appeals in 24 Mich. App. 179. This case was cited by Local 495 and an amicus curiae in their briefs but only for the decision of the Appeals Court, and it was cited in the briefs of the city and an amicus curiae for the 1968 decision of the Michigan Circuit (trial) Court.

in a municipal collective bargaining agreement are unconstitutional as applied to civil service employees. The bill for declaratory relief did not question the constitutionality of the statutes. The city's answer generally admitted the material facts alleged in the bill and then continued with prayers for specific interpretations of portions of the statutes and contracts involved, but did not question the constitutionality of the statutes.[4] General Laws c. 231A, § 8, inserted by St. 1945, c. 582, § 1, directs that "[i]f a question of constitutionality is involved in any proceeding under this chapter, the attorney general shall also be notified of the proceeding and be entitled to be heard." Since no such question was raised no notice was given to the Attorney General and, understandably, he has not appeared or otherwise participated in this proceeding. Equally understandably, the brief of Local 495 does not argue the question of constitutionality. Nevertheless, the city by its brief now attempts to question the constitutionality of the pertinent statutes, claiming that "[i]f the city . . . were to compel civil service employees to pay an agency service fee as a condition of employment, such employees would have good ground for claiming that they have been denied their rights under the 14th Amendment of the United States Constitution." For the two reasons that the pleadings raise no constitutional question and that no notice of any such question has been given to the Attorney General, the city may not now raise the question before this court. See *City Manager of Medford* v. *Civil Serv. Commn.* 329 Mass. 323, 330; *Court St. Parking Co.* v. *Boston,* 336 Mass. 224, 232; *Weinstein* v. *Chief of Police of Fall River,* 344 Mass. 314, 315, fn.; *Pioneer Credit Corp.* v. *Commissioner of Banks,* 349 Mass. 214, 221, fn.; *Saraceno* v. *Peabody,* 361

---

[4] The answer prayed for a decree that (1) and (2) the statutes in question permitted but did not require city employees to authorize the deduction of agency service fees from their pay, (3) the city may not make such a deduction without a voluntary authorization from an employee, (4) St. 1970, c. 463, does not curtail or restrict rights of civil service employees under G. L. c. 31, and (5) notwithstanding the existence of a collective bargaining agreement providing for payment of an agency service fee, the city may not discipline or otherwise affect the employment rights of an employee who refuses to authorize a payroll deduction of such a fee. There followed prayers for costs and "such other and further relief as . . . [the] Court deems proper and just."

Mass. 696, 702. Although not required to do so, we have examined the somewhat obscure constitutional argument based on the possible violation of the due process and equal protection clauses of the Fourteenth Amendment and conclude that it is without merit.

We are mindful of the fact that the collective bargaining agreements containing the now disputed agency fee provisions expired on July 7, 1973. Notwithstanding this fact, we do not treat the case as moot. The motion of the parties for the reservation and report of the case to the full court states that "[s]imilar issues may arise in other cities and towns which have accepted the provisions of the agency fee statute." The question involved is one of first impression in this Commonwealth and it is one of importance to many municipalities and their employees. We take notice of the fact that many collective bargaining agreements are for a period of time which may make it very difficult, and perhaps impossible, to commence and complete proceedings for declaratory relief during the life of the agreements. Thus we have in this case an issue often described as "capable of repetition, yet evading review." *Southern Pac. Terminal Co. v. Interstate Commerce Commn.* 219 U. S. 498, 515. *Moore v. Ogilvie,* 394 U. S. 814, 816. *Dunn* v. *Blumstein,* 405 U. S. 330, 333, n. 2. *Tsongas* v. *Secretary of the Commonwealth,* 362 Mass. 708, 713-714. See *Reilly* v. *School Comm. of Boston,* 362 Mass. 689, 694-695. The issue has been fully argued to us in an adversary proceeding and we think it appropriate that we express our opinion thereon. *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731.

A final decree shall be entered declaring substantially that:

(1) the agency service fee provisions contained in the three collective bargaining agreements between the City of Worcester and Local 495 and described in the bill were and are valid,

(2) the agency service fee provisions required that each employee of the several bargaining units covered by the agreements, whether a civil service employee or not, who was

not a member in good standing of Local 495, pay an agency service fee to Local 495 as a condition of his employment by the city, and

(3) the city, its city treasurer and its city manager were required to comply in full with the agency service fee provisions.

*So ordered.*